UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  NEW YORK

_____

MARIA DOLORES RIVERA,

                        Plaintiff                           DECISION AND ORDER

-vs-

                                                     15-CV-6048 CJS

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                         Defendant.

_____

APPEARANCES

For the Plaintiff:                 Catherine M. Callery
                                 Empire Justice Center
                                 One West Main Street, Suite 200
                                 Rochester, New York 14614

For the Defendant:             Maria Pia Fragassi Santangelo
                                 Social Security Administration
                                 Office of General Counsel
                                 26 Federal Plaza, Room 3904
                                 New York, New York 10278

                                 Kathryn L. Smith, A.U.S.A.
                                 Office of the United States Attorney
                                 for the Western District of New York
                                 100 State Street, Room 620
                                 Rochester, New York 14614

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant"),

which denied the application of Maria Dolores Rivera ("Plaintiff") for Supplemental

Security Income ("SSI") disability benefits.  Now before the Court is Plaintiff's motion

(Docket No. [#9]) for judgment on the pleadings and Defendant's cross-motion [#13] for judgment on the pleadings.  Plaintiff's application is granted and Defendant's application is denied.

BACKGROUND

The reader is presumed to be familiar with the Parties' submissions, which contain detailed recitations of the pertinent facts.  The Court has reviewed the entire record and will offer only a brief summary of those facts.  Plaintiff, who was age 53 at the time of the hearing, attended school in Puerto Rico, but stopped after the sixth grade and never earned her GED. (32).  Plaintiff has a very limited work history, as her total reported earnings appear to be $783 in 2004, $2,476 in 2008, $2790 in 2009 and $47 in 2010. (131).  Plaintiff's longest period of employment appears to have been between 2008 and 2009, when she provided care to an elderly homebound woman on a part-time basis. (32-33).  Plaintiff also apparently also had brief stints working in a bakery and in a deli, though she did not recall those jobs when testifying at the hearing. (144-147).

On January 26, 2012, Plaintiff applied for SSI benefits, claiming that she became disabled on January 1, 1997, due to "depression," "anxiety" and "back and knee pain." (132-136).  On April 2, 2013, Plaintiff appeared for a hearing before a Social Security Administration Administrative Law Judge ("Judge"), accompanied by a legal representative.  Plaintiff and a vocational expert ("VE") both testified at the hearing.  On April 5, 2013, the ALJ issued a Decision (14-25), denying Plaintiff's claim.

Applying the familiar five-step sequential analysis for evaluating disability claims,[1]

---

[1] *See, Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (Explaining the five-step sequential analysis).

the ALJ found, at the first step, that Plaintiff has not engaged in substantial gainful activity since January 26, 2012. (16).  At the second step, the ALJ found that Plaintiff has the following severe impairments: "emphysema, sleep apnea, lumber degenerative spondylosis, anxiety and depression. (16).  At the third step of the sequential analysis the ALJ found that none of Plaintiff's severe impairments meet or medically-equal an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

Prior to reaching the fourth step of the analysis, the ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

> Claimant has the [RFC] to perform a range of light work as defined in 20 CFR 416.967(b) except: occasional exposure to irritants, such as fumes, odors, dusts and gases; occasional exposure to poorly ventilated areas; occasional exposure to chemicals; able to perform simple, routine, repetitive tasks; and only occasional superficial interaction with public, co-workers and supervisors.

(18).  In making that RFC finding, the ALJ considered various evidence, including reports from Plaintiff's treating nurse practitioner, Annmarie Lagonegro, N.P. ("Lagonegro"), Plaintiff's treating therapist, Tonya Girard, LMFT[2] ("Girard"),  a non-treating consultative examiner, Yu-Ying Lin, Ph.D. ("Lin"), and a non-examining agency medical consultant, "Harding, T., Psychology" ("Harding").

Lin's examination found that Plaintiff had a poor manner of relating, lethargic motor behavior, dysphoric (distressed) affect, dysthymic (depressed) mood, impaired concentration and attention, impaired memory, cognitive functioning between borderline

---

[2]"An 'LMFT' (Licensed Marriage and Family Therapist) is not an 'acceptable medical source,' but may be considered as an 'other source' under the regulations." *Jones v. Comm'r of Soc. Sec.*, No. 5:15CV0076, 2016 WL 1077099, at *9, n. 5 (N.D. Ohio Mar. 18, 2016) (citations omitted).

and deficient, fair insight and poor judgment. (245-246).  Lin concluded that Plaintiff "cannot maintain attention and concentration," "is not able to maintain a regular schedule," "cannot learn new tasks," "cannot perform complex tasks independently," and "cannot make appropriate decisions, relate adequately with others[,] appropriately deal with stress" or handle her own finances. (247).  Overall, Lin found that the results of the examination were "consistent with psychiatric and cognitive problems [that] may significantly interfere with [Plaintiff's] ability to function on a daily basis." (247).

Shortly after Lin's examination, Harding, the agency review consultant, completed a report, purportedly based upon medical evidence that included Lin's report. (330-333). Unlike Lin, Harding found that Plaintiff had only "mild to moderate psych related limitations." (332).  In particular, Harding found that Plaintiff was not "markedly" limited in any activity, and was only "moderately limited" in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, complete a normal workday or workweek without interruptions from psychologically-based symptoms, accept instructions and criticism, respond to changes in the work setting and set realistic goals. (331).  Harding's report is dated March 30, 2012, which is approximately one year prior to the hearing in this action, which occurred on April 2, 2013. (29, 332).

Lagonegro's notes opine that Plaintiff suffers from a "mixed Bipolar" disorder. (200).  Lagonegro's reports span 2010-2013, during which time, in an attempt to improve Plaintiff's depression and insomnia,  Lagonegro prescribed various medications including Seroquel, Trazodone, Abilify, Lithium, Zyprexa, Risperdal, Wellbutrin, Ambien and

4

Lamictal.  Lagonegro routinely performed mental status examinations of Plaintiff, the results of which were generally normal, except for pressured speech, angry/depressed mood and anxiety.[3]  Overall, Lagonegro seemed somewhat perplexed at Plaintiff's condition, but never questioned the veracity of Plaintiff's complaints, and tried a wide variety of medications to address the symptoms. *See, e.g.*, (252) ("It is very difficult at this point to ascertain client's status as she has a very long history of being depressed and anxious.  She reports that in general , she is better, especially since starting lithium in her life but her anxiety is worse."); *see also*, (258) ("She seems to persist with significant level of depression and anxiety in spite of taking lithium and Zyprexa.").  For example, in August 2012, Lagonegro questioned whether Plaintiff's seeming "non-responsiveness to meds" was caused by a thyroid condition (347), and as late as January 2013, Lagonegro was trying new medications because the medications that she had already prescribed either weren't working sufficiently well or were causing side effects. (409; *see also*, 411 "She was tried on a variety of psychotropics many of which she discontinued due to side effects.").

Lagonegro reported that Plaintiff would, at times, unilaterally stop taking a particular medication if it caused side effects. *See, e.g.*, (265) ("She has discontinued the trazodone, as her experience in the past was that she was more anxious and had insomnia because of it."); (409) (Stopped taking Lamictal due to itching).  Lagonegro's

---

[3] *See*, 200-201; 209 ("significant depression and significant anxiety");  213-214; 216-217; 221-222, 226-227, 229-230, 233-234, 238-239, 251-253 ("anxiety is significantly high"); 257-258 (auditory hallucination); 265-266; 273-274; 298-299 ("Maria Rivera will continue to carry a diagnosis of Bipolar Mixed with predominant phase [being] depression.  At this point and time her target symptoms are anorexia, insomnia global and fatigue, anhedonia, anxiety, irritability and excessive worry and difficulty going into public places.").

supervising physician, Psychiatrist Adrian Leibovici, M.D., suggested that Plaintiff needed to be more persistent in allowing newly-prescribed medications to work before discontinuing them because of side effects (412-413).  Lagonegro also noted that Plaintiff's "compliance with medications" "varied," but also stated that Plaintiff had "a very complicated [history] of [symptoms] of depression." (416).

On March 22, 2013, therapist Girard completed a report entitled, "Mental Residual Functional Capacity Assessment." (437-438).  Girard indicated that Plaintiff has "moderately severe" limitations in the following areas: ability to remember locations and work procedures, ability to maintain attention and concentration for at least two hours, ability to complete a normal work day and work week without interruption form psychological symptoms, ability to interact with public, ability to respond to changes at work, and ability to set goals. (437-438).  Girard further stated that Plaintiff has "moderate" limitations in the following areas: ability to understand and remember instructions, ability to carry out instructions, ability to make work-related decisions, ability to be aware of normal hazards and ability to travel in unfamiliar settings. (437-438).

In evaluating the foregoing evidence, the ALJ began by noting that Lin's report showed fairly significant limitations.  However, the ALJ essentially disregarded Lin's report, primarily because Lin had only examined Plaintiff once, but added that Lin's report was inconsistent with the rest of the medical record.  For example, the ALJ interpreted Lagonegro's notes as generally showing that Plaintiff's condition was "improved with medication," and might have been even better if Plaintiff had been more compliant in taking her medication. (21).  On that point, the ALJ found that Plaintiff was unreliable in attending appointments and in taking medication, which, he found,

undermined her credibility. (20, 22).

The ALJ rejected the opinions of Girard (and Plaintiff's former therapist, Catie Worden, LMSW ("Worden")) because Girard is not an "acceptable medical source." (23). The ALJ gave two additional reasons for rejecting Girard's report:  First, the report was not supported by office notes; and second, the report was inconsistent with Lin's "relatively unremarkable" report, though, as already mentioned, the ALJ's own previous description of Lin's report does not suggest that the report was "unremarkable." (23).

Finally, the ALJ purported to give only "some weight" to Harding's opinion, but actually the ALJ seems to have adopted Harding's findings. (23).[4]

At the fourth step of the sequential analysis, the ALJ found that Plaintiff is unable to perform any past relevant work.  At the fifth step of the analysis, the ALJ found that Plaintiff's RFC permits her to perform other jobs, such as "laundry worker (DOT 361.687-014), "collator" (653.687-010) and "office helper" (DOT 239.567-010).  Consequently, the ALJ found that Plaintiff is not disabled.  Plaintiff appealed, but the Appeals Council declined to review the ALJ's determination.

On January 29, 2015, Plaintiff commenced this action, alleging that the Commissioner's decision must be reversed because it contains errors of law and is not supported by substantial evidence, particularly with regard to the RFC determination. Plaintiff maintains that the ALJ improperly evaluated the evidence, which resulted in an improper RFC determination, and which in turn caused the ALJ's hypothetical questions

---

[4]The ALJ indicated that she disagreed with Harding's conclusion that Plaintiff "would not be able to complete a normal workweek" (23),  but Harding did not actually express such an opinion.  Rather, Harding stated only that Plaintiff would have moderate limitations in that activity. (331).   Otherwise, the ALJ seems to have agreed with Harding's assessment.

to the VE to be inadequate.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."  The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

In situations where a claimant has been inconsistent in seeking treatment or with following through on treatment recommendations, the Commissioner has stated that,

> statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the

individual may provide insight into the individual's credibility.

Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of

an Individual's Statements, SSR 96-7P (S.S.A. July 2, 1996).[5]

DISCUSSION

At the outset the Court notes that the ALJ's Decision contains drafting errors that

likely contributed to her ultimate determination that Plaintiff is not disabled.  First, the ALJ

indicates that Plaintiff switched from therapist Valerie Nester to therapist Catherine

Worden "as a result" of Plaintiff's "difficulties with keeping the weekly therapy

appointments with Nester. (20).  This observation apparently was intended to support the

ALJ's finding that Plaintiff was non-compliant with treatment.  However, the statement is

incorrect, since the record actually indicates that Plaintiff began treating with Worden

because Nester left the agency, not because Plaintiff was inconsistent in keeping

appointments with Nester. (207).  The ALJ further stated that Dr. Lin "ruled out mild

mental retardation," which is also incorrect. (21).  Actually, Lin reported that Plaintiff's

cognitive functioning was "between borderline and deficient," and for his Axis II finding he

stated, "rule out mild mental retardation," meaning that such a diagnosis was possible

and had not yet been ruled out. *See, e.g., Williams v. Colvin*, No. 4:13-CV-257-D, 2015

WL 575400, at *3, n. 4 (E.D.N.C. Feb. 11, 2015) ("The phrase 'rule out' indicates that an

individual has been found to potentially meet the diagnostic criteria for a particular

medical condition, but that additional evidence is needed for a definitive diagnosis.")

---

[5]SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016.

(citations omitted).[6]  The Court need not decide whether these errors alone would require remand, since as discussed further below, the points raised by Plaintiff also require remand.

Turning to Plaintiff's arguments, she first contends that the ALJ erred, while considering her RFC, by excluding Girard's opinion, due to the fact that Girard is not an "acceptable medical source." (23) ("I did not assign any weight to Ms. Girard's opinion because she is the claimant's therapist and is not considered an acceptable medical source.").  The Court agrees that this was an error.  Generally, only "acceptable medical sources" can provide evidence to establish the "*existence* of a medically determinable impairment ["(MDI)"]," but "other medical sources" and non-medical sources can provide evidence "to show the *severity* of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p (emphasis added).  At the stage of her analysis when the ALJ rejected Girard's report, she had already concluded that Plaintiff had various severe impairments, and was considering the severity of those impairments and their effect on Plaintiff's ability to work.  Moreover, Girard's report does not purport to establish the existence of an impairment, but rather, discusses various limitations imposed by those impairments.  Accordingly, the ALJ should not have rejected Girard's report on the ground that Girard is not an acceptable medical source. *See*, 20 C.F.R. § 416.913(d) ("In addition to evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."); *see also*, 20 C.F.R. § 416.945(a)(3) ("We will assess

---

[6]The ALJ's misinterpretation of this common medical phrase is surprising.

10

your residual functional capacity based on all of the relevant medical *and other*

*evidence*.") (emphasis added); "Clarification of Rules Involving Residual Functional

Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at

Step 4 of the Sequential Evaluation Process; Incorporation of 'Special Profile' Into

Regulations," 68 FR 51153-01, 2003 WL 22001943  ("[W]e clarify that we consider

descriptions and observations of your impairment-related limitations from both medical

and non-medical sources" when evaluating RFC.).

Plaintiff next contends that insofar as the ALJ alternatively gave no weight to

Girard's report because it was unsupported by "progress notes," the ALJ erred by failing

to develop the record.  In this regard, the ALJ stated: "[T]here are no progress notes in

the file from the therapy sessions with Ms. Girard even though the claimant indicated that

she saw Ms. Girard twice." *See*, ALJ's Decision at (23).[7]  The ALJ's statement indicates

that she was aware that Plaintiff had been seen by therapist Gerard twice, and that the

records from those visits were missing from the record.  The Court agrees that the ALJ

should have developed the record.  In that regard, an ALJ is supposed to make "every

reasonable effort to help [a claimant] get medical reports from [the claimant's] own

medical sources," *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), and the Social Security

Administration uses the term "medical sources" to "refer[ ] to both 'acceptable medical

sources' and other health care providers who are not 'acceptable medical sources.'" SSR

06-03p; see also, 20 C.F.R. § 416.902 ("Medical sources refers to acceptable medical

---

[7]Incidentally, the fact that Plaintiff had only met with Girard twice was because as of the date of the hearing, Girard had only recently replaced Catie Worden as Plaintiff's therapist.  In any event, it is unclear whether Girard based her report only on her own personal observations, or whether she also relied upon the notes from her predecessor therapists, Nester and Worden.

sources, or other health care providers who are not acceptable medical sources."). Under the circumstances presented here, the ALJ should have attempted to obtain Girard's office notes before rejecting her report as being unsupported.

Plaintiff further contends that the ALJ's determination, that Girard's report is inconsistent with Dr. Lin's "relatively unremarkable" examination notes, is incorrect. According to Plaintiff, Lin's report is hardly "unremarkable," because it indicates that Plaintiff has significant limitations.  The Court agrees and notes, for example, that Lin found that Plaintiff "cannot maintain attention"; "is not able to maintain a regular schedule"; "cannot learn new tasks"; "cannot make appropriate decisions"; cannot "relate adequately with others"; cannot "deal with stress"; and cannot manage her own funds. (247).  The ALJ's decision is also internally inconsistent in how it describes Lin's report. (21, 23).

Plaintiff also maintains that the ALJ erred by making a negative credibility finding toward her, based on her finding that Plaintiff's condition would have improved but for Plaintiff's non-compliance in taking her medications.  Plaintiff contends that the ALJ's statement -- that her condition improved with medication -- is not supported by substantial evidence.  Plaintiff also indicates that the ALJ should not have used her alleged non-compliance as a basis to deny her claim without first asking her about the alleged non-compliance at the hearing, and giving her an opportunity to explain.  The Court agrees that the ALJ should have given Plaintiff an opportunity to explain the alleged non-compliance and/or sought clarification from Plaintiff's treatment providers. *See*, *e.g., Mitchell v. Colvin*, 584 F. App'x 309, 313–14 (9th Cir. 2014) ("[D]isability adjudicators are 'not [to] draw any inferences about an individual's symptoms and their

12

functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain ... failure to seek medical treatment'" SSR 96–7p at *7. Agency rules instead advise that 'to determine whether there are good reasons the individual does not ... pursue treatment in a consistent manner,' disability adjudicators 'may need to recontact the individual or question the individual at the administrative proceeding.' *Id*.").   Moreover, the ALJ did not address information in the record indicating that Plaintiff stopped taking particular medications because of undesirable side effects.

CONCLUSION

Plaintiff's application for judgment on the pleadings [#9] is granted, and Defendant's cross-motion [#13] is denied.  This matter is remanded to the Commissioner for further administrative proceedings, pursuant to 42 U.S.C. § 405(g), sentence four. The Clerk of the Court is directed to close this action.

So Ordered.

Dated: Rochester, New York
          October 7, 2016                    ENTER:


                                                      /s/ Charles J. Siragusa
                                                      CHARLES J. SIRAGUSA
                                                      United States District Judge